**AMERICAN CIVIL LIBERTIES UNION et al., Plaintiffs-Appellees,**

v.

**Harold BROWN, Secretary of Defense, et al., Defendants-Appellants.**

No. 78–1906.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1979.

Decided June 7, 1979.

Rehearing En Banc Granted
July 31, 1979.

Eloise E. Davies, Civ. Div., Dept. of Justice, Washington, D.C., for defendants-appellants.

Patricia C. Slovak, Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS and PELL, Circuit Judges, and NOLAND, District Judge.*

NOLAND, District Judge.

This appeal is before the Court pursuant to 28 U.S.C. § 1292(b) to review the District Court's order of March 28, 1978 rejecting the appellants' claim that certain information and documents sought by the appellees are protected by the state secrets privilege. The underlying action seeks to redress the appellants' allegedly unconstitutional investigation and intelligence gathering activities aimed at the appellees and the classes they represent.

On August 16, 1976, the appellees filed their first set of interrogatories to the appellants' predecessors which included the following requests:

5. . . . .

(B) Identify any and all standards that have directed, governed, and/or applied in any other way to domestic intelligence activities or techniques.

(C) Produce all documents identified in (B).

. . . . .

26. *Document Request:* With respect to the CIAB's domestic intelligence files discussed in 25, produce:

. . . . .

(B) Any and all supportive filing materials, including indices (on paper, microfilm, or computerized) that were used in connection with the CIAB's domestic intelligence files insofar as such materials relate to the Chicago metropolitan area.

. . . . .

34. With respect to the 113th MIG, Region I Headquarters, Evanston, Illinois, and the Evanston and Chicago Field officers:

. . . . .

(M) Identify all persons other than fulltime employees who performed domestic intelligence work of any kind for any of these officers, and with respect to each such person state whether they received payment or other consideration, and if so, the amount.

The appellants responded in December of 1976 by objecting to these requests due to the sensitive nature of the information and materials sought. In June of the following year, the appellants filed three affidavits which identified the only materials which could be provided in order to respond to the appellees' requests and asserting the state secrets privilege relative to those documents. Relative to requests 5(B) and (C) Army Field Manual 30–17A, Counterintelligence Special Operations (confidential); Army Regulation 381–12–1, Processing of SAEDA Incidents (Subversion and Espionage Directed Against the Army) (confidential); and Army Regulation 381–47, U.S. Army Offensive Counterintelligence Operations (Secret) were all found to be responsive. Relative to request 26(B) the Counterintelligence Research Files System (CIRFS) was found to be responsive. Request 34(M) sought the identity of a human source of intelligence information.

In its order of September 14, 1977, the District Court found these affidavits to be "too indefinite" to support the appellants' claim. It further stated:

The Court hereby orders these officials to set forth more detailed justifications for the claims of privilege and to submit for *in camera* inspection the Army Regulations here in question within 30 days of the date of this Order.

No specific reference is made to the CIRFS or the human source in this order. The Army responded by filing an additional affidavit and submitting the Army Regulations and Field Manual requested by the Court. On March 28, 1978, the Court found that the Army had failed to "sufficiently support" its claims of privilege. The Court specifically stated: "The Acting Secretary of the Army has now filed further affidavits and submits the materials for which the privilege has been invoked for *in camera* inspection." The District Court believed

---

* District Judge James E. Noland of the Southern District of Indiana is sitting by designation.

the protective orders it has entered would adequately protect the materials involved from the disclosure the appellants fear. The Court's order further stated "This Court's *in camera* examination of these documents [Army Regulations and Manual] reveals that these claims are not meritorious . . . ." Because the District Judge only examined the Army Regulations and Manual *in camera,* the quoted language seems to indicate that the District Court failed to fully consider the claims made relative to the CIRFS and the informant. Its ruling relative to these items may thus require more thorough review.

### Standard of Review

■ The parties agree that *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), is the starting point for our inquiry. The District Court correctly pursued the procedure set down in that case by considering the appellees' need for the information and balancing that need against the claims made by the government. Contrary to the appellants' assertions, *Reynolds* itself provides no standard for determining the relative importance of these competing interests because there the plaintiff's need for the information was clearly insubstantial. The Supreme Court's determination was based upon a belief that Congress did not by passage of the Federal Tort Claims Act intend to waive the government's traditional claims of privilege. With passage of the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.,* the Court seized upon apparent congressional intent to give executive agencies complete discretion to determine which documents required protection and which did not. *EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Congress later clarified its desire by amending that Act to state that such documents must be "in fact properly classified." 5 U.S.C. § 552(b)(1)(B). § 552(a)(4)(B) specifically provides for a *de novo* determination by a District Court and *in camera* inspection of the Court feels such action is warranted.

It is unclear the extent to which this statutory provision for release of government documents applies to civil discovery disputes; but this Court agrees with the appellees that to apply a different standard in this context would be incongruous. Brief of Appellees at 21. The Supreme Court in fact drew some parallels between civil discovery matters and the FOIA in *EPA v. Mink,* relative to inter and intra agency communications. *Mink, supra* at 85, 93 S.Ct. 827. *See also Sec. of Labor v. Farino,* 490 F.2d 885 (7th Cir. 1973). This Court will look to the FOIA for guidance in determining the sustainability of the appellants' claims.

■ No clear and concise standard has been developed under that Act, if one is in fact feasible, to determine whether an agency has adequately made a case for nondisclosure. No formula will likely be of value but the FOIA itself puts the burden upon the agency to justify its classification of the documents. 5 U.S.C. § 552(a)(4)(B). Further a Court generally may not deny disclosure of documents under that Act unless they are clearly covered by one of its exemptions. This Court believes that in the context of civil litigation the balancing test in *Reynolds* must be combined with the FOIA, thus creating a variable burden upon the government dependent upon the need shown by the plaintiff.[1] In addition when, as in this case, the dispute involves more than one document or type of information, the District Court's inquiry must look at each item or logically related group of items individually in order to assure full consideration of the government's claims. *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 347, 484 F.2d 820, 827 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

■ The final issue which must be resolved before considering the specific discovery requests here before the Court is the standard of review to be applied to the District Court's decision. The appellees

---

1. It is not hereby suggested, of course, that only items to be disclosed under the FOIA are civilly discoverable. See Rules 26–37 of the Federal Rules of Civil Procedure.

urge the adoption of an "abuse of discretion" standard to review the District Court's factual finding that the documents it examined contained no state secrets. The appellants assert any determination of that type involves mixed questions of law and fact. Of course, normally the District Court is allowed broad discretion in the resolution of discovery disputes, but the mixture in this action of the basic fairness issues usually involved in such disputes with the state secrets privilege requires a more thorough review of the Court's determination. It appears that review by the Court of Appeals in FOIA cases has involved a detailed analysis of the information and documents involved through the affidavits filed by the government and *in camera* inspection. *Ray v. Turner*, 587 F.2d 1187 (D.C.Cir. 1978); *Maroscia v. Levi*, 569 F.2d 1000 (7th Cir. 1977). Because the determination to be made here does involve an application of the exemptions of the FOIA to the facts of the case the Court will make its own inquiry into the interests claimed by the government, giving due deference to the purely factual determinations made by the District Court.

### Source IC–E–003

■ Appellees' interrogatory 34(M) requests the identity of all persons other than employees who performed domestic intelligence work in the Chicago area during the period in question. The appellants responded by identifying, by code number, source IC–E–003 who performed such work without compensation except for expenses, between March 1969 and May 1970. The affidavit of Edmund R. Thompson, Commander of the United States Army Intelligence Agency, asserts the need to maintain the anonymity of this and all human sources in order to assure a full and free disclosure of information. "Failure to protect his identity would not only create a serious breach of confidence but would also result in an understandable refusal to furnish information to the U. S. Government." Thompson Affidavit, Appellants' Appendix at 59.

Because the District Court's orders make no specific reference to this sensitive request it is unclear whether it made a determination of the appellees' need for this information. The appellees assert that a distinction must be drawn between the informant's privilege and the privilege claimed here to protect state secrets. Appellees' Brief at 15. This attempt to draw technical distinctions is unimpressive, however, since this is not a case where one is being denied his constitutional right to confront his accuser but rather is being denied classified government information thus appropriately claimed as a state secrets privilege. This Court finds no grounds in the record supporting a finding of need to identify this source. Cf. *Socialist Workers Party v. Attorney General*, 596 F.2d 58 (2d Cir. 1979).

Even if a need were shown, it would have to be substantial in light of the FOIA's clear exemption for this type of information. Thus 5 U.S.C. § 552(b)(7)(D) provides:

This [disclosure] section does not apply to matters that are—

.    .    .    .    .

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (D) disclose the identity of a confidential source and, in the case of a record compiled by . . . an agency conducting a lawful national security intelligence investigation, confidential information furnished only by [that] source . . . .

It is true that this provision only applies to "lawful national security investigations;" however the mere allegations of a plaintiff should not be adequate to cause disclosure at least prior to the use of alternative methods of interrogating this source. By the use of interrogatories or electronic communications the activities of this source may be discovered without compromising his confidentiality. Of course the questions themselves must deal with his actions in general without attempting to elicit his identity through subterfuge.

Because the Court feels the balance of interests in regard to the discovery of the identity of Source IC–E–003 weighs in favor of the appellants the order of the District Court must be reversed.

## C I R F S

■ Appellees' interrogatory 26(B) requests any supporting materials and indices used in connection with the appellants' domestic intelligence files. The appellants responded by identifying the Counterintelligence Research Files System which indexes on microfilm information relative to intelligence activities all over the world. It is clear the appellees' request only reaches a portion of this document but the affidavit of Walter B. LaBerge, Acting Secretary of the Army, asserts that it is impossible to prepare a printout from this computerized index which includes only individuals in the Chicago area since it is not indexed by geographical area. The appellants assert they have searched the file by use of all names provided to them by the appellees and can provide no further information without preparing a printout of the entire file. The appellants assert that disclosure of the entire file would:

> reveal many of the targets of national counterintelligence activities, and in some cases would identify the organization that conducted a particular investigation. Those targets include hostile intelligence agents and organizations, and foreign individuals and organizations engaged in covert intelligence collection operations. The release of information of this type could significantly harm the national security by alerting targets of the fact that they have been brought to the investigative attention of U.S. agencies, and by indicating the extent to which the national intelligence community has in past years been able to identify hostile intelligence agents and organizations worldwide. A complete or relatively complete list of CIRFS documents would indicate the priorities of the United States in the collection of counterintelligence information, and thus indicate where the various U.S. intelligence agencies have been fo-

cusing their collection efforts. Release of information of this sort would likely cause grave damage to the national security by reducing the present ability of Army intelligence units to counter hostile intelligence collection efforts worldwide. In certain cases, where the title of a particular document indicates that it contains information that could only be acquired from a particular type of intelligence source or using a particular method of intelligence collection, release of the title would gravely endanger sensitive intelligence sources and methods and thereby harm the national security.

LaBerge Affidavit, Appellants' Appendix at 68–69.

Again, because the District Court's orders make no specific reference to this request it is unclear whether it made a determination of the appellees' need for this information. The appellees assert the affidavits do not justify the appellants' refusal to disclose the specific information they seek and that the difficulty which exists due to the commingling of foreign and domestic files and the absence of capability to sort these files according to geographic area is a burdensomeness claim which the District Court found to be without merit. Appellees' Brief at 17. The District Court's order, however, is unclear in regard to which of the numerous defendants and numerous discovery disputes it was referring when it made that finding. Appellants' Appendix at 75.

Assuming there is a need for this information in order to show the type of intelligence which was collected, that need cannot overcome the legitimate interests of the appellants in protecting the entire CIRFS from disclosure since the affidavits clearly and succinctly state the national security interests which would be compromised by disclosure of that information. In fact the appellees do not even seek such broad disclosure. The only question is whether the appellants must be put to the task of sorting out the specific references in this voluminous file which relate to individuals in the Chicago area. It is this type of harassing request about which this Court ex-

pressed concern in affirming the District Court's certification of this action as a class action. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 980, n.12 (7th Cir. 1977). In light of the fact that the District Court did not fully address these problems or consider whether the appellees may be required to bear the costs of this sorting operation, its order must be reversed and remanded, but this burdensomeness issue should be resolved expeditiously in view of the delays that have already occurred. See Supplemental Appendix 33–35.

*Army Regulations and Field Manual*

█ Appellees' interrogatory 5(C) requests all documents which specify standards for domestic intelligence activities. The appellants responded by identifying three Army publications which are responsive to this request—Army Field Manual 30–17A, Counterintelligence Special Operations (Confidential); Army Regulation 381–12–1, Processing of SAEDA Incidents (Subversion and Espionage Directed Against the Army) (Confidential); and Army Regulation 381–47, U.S. Army Offensive Counterintelligence Operations (Secret). The affidavit of Clifford L. Alexander, former Secretary of the Army, states:

> The cited regulations and manual describe in detail the objectives, policies, procedures, and controls in the area of authorized counterintelligence and security activities. They discuss the selection and training of personnel involved in such activities, and describe particular types of operational techniques to be used in particular situations. Army Regulations 381–47 and 381–12–1 are regulatory guidance for such activities. Field Manual 30–17A contains applicable Army doctrine and explains the methods of operations.
>
> The disclosure of the classified portions of these documents could compromise ongoing and future counterintelligence investigations, and could enable hostile intelligence agents to determine the identity and actions of Army counterintelligence personnel. Most counterintelligence investigations are conducted in or-

der to protect from disclosure, often to hostile foreign agents, information properly classified in the interest of national security. By learning the process by which counterintelligence operations are conducted it is possible in many cases to detect or frustrate them. Since the documents further explain the methods by which Army counterintelligence personnel avoid disclosing their identities, public release could seriously jeopardize the safety and effectiveness of counterintelligence agents who are in vulnerable positions. Perhaps most importantly, the techniques and procedures set forth in the documents are in many respects similar to procedures used in the collection of foreign intelligence information. Release of the documents could therefore enable persons to identify and frustrate Army foreign intelligence collection efforts, and thereby reduce the ability of the United States to acquire information necessary to preserve the national security. Release would also increase the possibility that Army collection efforts would be fed erroneous information by foreign agents.

Alexander Affidavit, Appellants' Appendix at 46.

This Court, like the District Court, has reviewed these documents *in camera*.

In regard to this information the District Court clearly found that the appellees have a need for these documents in that they would be useful to them as evidence of the appellants' activities and that the documents themselves do not contain state secrets. This Court finds that the District Court has abused its discretion in ordering the disclosure of these documents. The primary factor in this determination is the exception in the FOIA for investigative materials. Thus 5 U.S.C. § 552(b)(7)(E) provides:

> This [disclosure] section does not apply to matters that are—
>
> .     .     .     .     .
>
> (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such

records would . . . (E) disclose investigative techniques and procedures . . . .

Though the statute speaks of "law enforcement purposes" it seems appropriate to include national security investigations which may lead to charges of treason or other crimes against the government within that terminology. Having reviewed the documents at issue this Court finds they constitute the type of documents Congress intended to protect by this statute. Therefore, the District Court's order requiring disclosure of these documents must be and hereby is REVERSED.

CUMMINGS, Circuit Judge, concurring in part and dissenting in part.

I concur in those portions of Judge Noland's opinion with respect to the informant's identity and the Counterintelligence Research Files System. Regretfully, I dissent with respect to the Army Regulations and Field Manual for which the defendants only assert the state secrets privilege enunciated in *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727.[1]

As Judge Kirkland correctly ruled, in order to determine whether records should be produced that are classified "Secret" by the Government, it is necessary to conduct an *in camera* review of the documents. Otherwise the Government could so classify documents just to avoid their production when there is no true need for secrecy. As stated in *Reynolds, supra* at 9–10, 73 S.Ct. at 533, "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." Judicial scrutiny of government domestic security claims is therefore

especially appropriate. See *United States v. United States District Court*, 407 U.S. 297, 320–321, 92 S.Ct. 2125, 32 L.Ed.2d 752; *Ray v. Turner*, 587 F.2d 1187, 1194–1195 (D.C.Cir. 1978).

Like the district judge, I have reviewed the concededly relevant Army Field Manual and Army Regulations in question and fully agree with him that the state secrets privilege claim is "not meritorious in light of the protective order in effect in this case [2] and in light of defendants' assertions that all military domestic intelligence ceased in 1971" (App. 74). As with Judge Kirkland, "I found State secrets not to exist" (Supp. App. 32). Moreover the protective order will suffice to keep these materials from public view, but even if there were no protective order, the contents of these documents would scarcely surprise sophisticated members of our own public or foreign powers.

Unlike *Halkin v. Helms*, 194 U.S.App. D.C. 182, 598 F.2d 1 (D.C.Cir. 1978), on which the Government so heavily relies, these documents do not strictly concern past and ongoing foreign intelligence gathering. The Government asserts that although the plaintiffs are interested only in domestic surveillance of domestic activities, the procedures described by the regulations and manual at issue also applied to foreign intelligence conducted both in this country and abroad. To that extent, the purely domestic surveillance involved in this case may not be completely segregable from foreign intelligence gathering. Unlike the situation in *Halkin*, however, the documents at issue here involve only very general in-

---

1. The defendants did not rely on 5 U.S.C. § 552(b)(7)(E), that Section of the Freedom of Information Act (FOIA) on which the majority opinion rests its non-disclosure holding. As in *Halkin v. Holmes, infra*, they depended entirely upon the state secrets privilege.

   If the defendants had attempted to rely on this exception to the FOIA, it would not have helped them. First, that Act only establishes the minimum amount of material that clearly is discoverable. A litigant with a demonstrated need for information is allowed to discover material that would not be routinely released under the FOIA. Second, in the 1974 amend-

   ments to the FOIA, Congress mandated *de novo* judicial review of an agency's refusal to release documents, thereby clearly establishing that judicial deference to agency classification of its own documents is inappropriate. 5 U.S.C. § 552(a)(4)(B).

2. The protective order of October 14, 1976, is appended hereto. If defendants should consider it insufficient, plaintiffs' counsel advised us at oral argument that they would not object to further restrictions. Other protective orders were also entered but are not as pertinent to this issue as the appended one.

telligence techniques and could not reveal to any foreign power the fact that surveillance of its activities occurred, the targets and extent of such surveillance, or the means by which it was accomplished.

Furthermore, in *Halkin* the reviewing court basically affirmed the district court's conclusion that the material requested was privileged. While the appellate court also reversed the district court's decision to release certain information, this was because the district court had mistakenly believed that information to be segregable from the protected material, and was not due to any disagreement about the reach of the privilege. The appellate court recognized that "it is the showing of necessity that determines how deeply the court must probe to satisfy itself of the validity of the claim * * *" (194 U.S.App.D.C. at 90, 598 F.2d at 9). The district court is better situated than a reviewing court to assess a plaintiff's need for discovery. Here the district court explicitly concluded that the plaintiffs had demonstrated a need for this material. Its decision to allow discovery of disputed documents should be accorded appropriate deference and should be reversed only if our own *in camera* inspection convinces us that their release even under a protective order would constitute a true threat to the nation's security. It is unclear whether the majority was (unlike myself) so convinced or whether it employed a different standard of review.

The Government has not even suggested that the documents are protected from disclosure under the Freedom of Information Act on which the majority relies.[3] Since their disclosure would not endanger this nation's interest and their relevance is plain, these documents should be produced.

---

**3.** In their reply brief, the defendants cite 5 U.S.C. § 552(b)(1) which makes the disclosure provisions inapplicable to matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." However, defendants 'cite no Executive order that sup-

## APPENDIX

---

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

No. 74 C 3268
ALLIANCE TO END REPRESSION, et al.,

*Plaintiffs,*

v.

JAMES ROCHFORD, et al.,

*Defendants.*

Consolidated With

No. 75 C 3295
AMERICAN CIVIL LIBERTIES UNION, et al.,

*Plaintiffs,*

v.

CITY OF CHICAGO, et al.,

*Defendants.*

## ORDER

Upon consideration of the briefs submitted by the parties pursuant to the Court's Order of July 1, 1976, and the Court being fully advised in the premises:

IT IS HEREBY ORDERED THAT:

(1) Paragraph 4(b) of Pretrial Order No. 2 entered July 1, 1976 is hereby set aside. The Protective Order entered by this Court on July 31, 1975 is hereby vacated.

(2) Plaintiffs' counsel may disclose any writings, recordings or their contents which contain the names of plaintiffs or members of plaintiff class to the subjects thereof. The "subject" of each writing or recording is defined as:

(a) any individual named in a writing or recording; or

(b) with respect to any organization named in a writing or recording, the organization's present or past officers, staff and governing body members.

(3) Any individual named in a writing or recording may elect to make further disclosure of that writing or recording or the

---

ports the secrecy of these documents. As defendants recognize, Executive Order No. 12065 (June 28, 1978), the only one cited by defendants, "in no way affects the 'state secrets' privilege" (Reply Br. 4). Indeed the Executive order requires the declassification of documents when, as here, there is a "public interest in disclosure of the information."

contents thereof, but *only* insofar as it concerns that subject. That individual may *not* disclose the contents of the writing or recording insofar as the contents identify the system by which the information was obtained. The "system" is defined as:

All information produced by defendants in discovery which concerns the structure of the intelligence-gathering government entity and the manner or mechanics by which defendants gather, compile, record, or otherwise obtain information about plaintiffs' activities.

(4) Any organization named in a writing or recording may elect to make further disclosure of the writing or recording or the contents thereof, but *only* insofar as it concerns that organization. An organizational subject may *not* disclose the contents of the writing or recording to members of the organization or others insofar as the document identifies another individual or organization and insofar as the writing or recording identifies the system, as defined in paragraph (3) above, by which information was obtained.

(5) Prior to the dissemination of writings, recordings or the contents thereof to any plaintiff or class member, plaintiffs' counsel will deliver a copy of this Order to that plaintiff or class member and will explain the binding nature of this Order.

(6) Plaintiffs' counsel may adopt any more restrictive approach that they believe is in the best interest of members of plaintiff class.

(7) This Order does not prohibit plaintiffs' attorneys from discussing the writings, recordings or their contents with counsel who have participated or are participating in litigation of a similar nature so long as the following conditions are satisfied:

(a) Before disclosing the writings, recordings, or their contents to such outside counsel, plaintiffs' counsel will deliver a copy of this Order to such outside counsel and explain the binding nature of this Order;

(b) Before disclosing the writings, recordings, or their contents to such outside counsel, plaintiffs will obtain the consent of such counsel to the jurisdiction of this Court for the limited purpose of enforcing this Order;

(c) Such outside counsel may not disclose the writings, recordings, or their contents in any way.

(8) This Order in no way prohibits the parties from reporting any violations of law and any and all information relating to such violations to the appropriate law enforcement agency.

ENTER: /s/
ALFRED Y. KIRKLAND, JUDGE
October 14, 1976