**UNITED STATES STEEL CORPORATION, Republic Steel Corporation, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants,**

and

**Companhia Siderurgica Paulista ("Cosipa") and Usinas Siderurgicas De Minas Gerais ("Usiminas"), Defendants-Intervenors.**

**Court No. 82–10–01361.**

United States Court of International Trade.

Oct. 11, 1983.

---

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Francis J. Sailer, attorney, Commercial Litigation Branch), Washington, D.C., for the federal defendants.

Law Department of U.S. Steel Corp. (D.B. King, Pittsburgh, Pa., of counsel), for plaintiff U.S. Steel Corp.

Cravath, Swaine & Moore, New York City (Joseph R. Sahid, New York City, of counsel), for plaintiffs, Republic Steel Corp., Inland Steel Co., Jones & Laughlin Steel Inc., National Steel Corp., and Cyclops Corp.

WATSON, Judge:

By motion under Rule 26(c) [1] of the Rules of this Court, the federal defendants seek a protective order barring disclosure to plaintiffs of certain portions of the administrative record on the ground that they contain state secrets. The documents involved

---

1. Rule 26 ...

(c) *Protective Orders.* Upon its own initiative, or upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden, delay or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court. If the motion for a protective order is denied in whole or in part, the court may on such terms and conditions as are just, order that any party or person provide or permit discovery.

were submitted by the Government of Brazil [2] (Brazil) and the International Bank for Reconstruction and Development [3] (World Bank), an international agency, to the United States Department of Commerce, International Trade Administration (ITA) during the ITA's countervailing duty investigation of carbon steel plate from Brazil. Some of the documents submitted by Brazil originally came from the World Bank.[4] The claim of privilege for state secrets is not made for those portions of the documents which have been made public.

The federal defendants maintain that, without the protective order, relations between the United States and Brazil would be impaired since the information was provided by the Brazilian government with the expectation that it would be held in confidence. It is also argued that because the documents supplied by the World Bank were classified confidential by that entity, release of the information would impair the United States' future relations with the World Bank.

Defendants also allege that the documents have been properly classified as confidential pursuant to Executive Order 12356.[5] Additionally, defendants have submitted an affidavit in support of their motion from Secretary of Commerce Malcolm Baldrige, wherein he asserts a formal claim of state secrets privilege based on his opinion that disclosure of this information "would have a serious adverse effect on our bilateral foreign relations with Brazil and/or our relations with the World Bank and thereby reasonably be expected to cause damage to the national security." [6]

Plaintiffs oppose the motion on the ground, among others, that the defendants have failed to demonstrate that this material consists of state secrets. On this ground, the Court denies the motion for a protective order which would completely bar disclosure.

■ It is for this Court to determine whether the states secrets privilege applies. *United States v. Reynolds*, 345 U.S. 1, 8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953). Classification of the documents by the government does not immunize them from the Court's exercise of judgment on this point. *American Civil Liberties Union v. Brown*, 619 F.2d 1170, 1173 (7th Cir.1980) (*en banc*). Moreover, aside from its normal powers as a federal court, expressed in 28 U.S.C. § 1585, this Court in 19 U.S.C. § 1516a(b)(2)(B), has been specifically empowered to examine confidential or privileged material *in camera* and order disclosure. Furthermore, in 28 U.S.C. § 2641(b) Congress has also provided as follows:

> The Court of International Trade may order that trade secrets and commercial or financial information which is privileged and confidential, *or any information provided to the United States by any foreign government or foreign person*, may be disclosed to a party, its counsel, or any other person under such terms and conditions as the court may order. [emphasis supplied]

■ The Court has examined this material, in order to determine whether it conforms to the understanding of state secrets as that term has been applied by the courts. The Court finds that the material does not consist of state secrets and does not achieve the status of a state secret by virtue of a request by a foreign government or international agency that it be kept confidential, or by this government's classi-

---

**2.** Administrative Record (AR) pages 4066–67; 4248–95; 5516–79; and 5732–5868.

**3.** AR 5580–5698.

**4.** AR 5516–79 and 5732–5868.

**5.** 47 Fed.Reg. 14874, *et seq.* That order prescribes a uniform system for classifying, declassifying and safeguarding "national security information."

**6.** The Court must express some doubt as to whether the Secretary of Commerce is the proper official to evaluate the effect of these matters on national security from the perspective of international relations. Nevertheless, it is the lack of substance in demonstrating an effect on national security which detracts from the affidavit. In this regard, an affidavit of the Secretary of State, couched in the same terms, would have been no better.

fication of it under Executive Order 12356, or by the opinion of the Secretary of Commerce that disclosure of the information to a party in this judicial review would damage international relations and reasonably be expected to damage national security. In brief, the disclosure of the information is not shown to present a possible threat to national security in the area of international relations.

The modern case law on the subject stems from the case of *United States v. Reynolds, supra,* which, in civil litigation against the government, upheld the privilege for a matter which would have threatened the exposure of military secrets, specifically electronic devices being tested on a military airplane. The privilege has extended into matters which might reveal specifics of the nation's intelligence gathering capability. *Spock v. United States,* 464 F.Supp. 510 (S.D.N.Y.1978); *Halkin v. Helms,* 598 F.2d 1 (D.C.Cir.1978); *American Civil Liberties Union v. Brown,* 609 F.2d 277, 281 (7th Cir.1979), *vacated on other grounds,* 619 F.2d 1170 (7th Cir.1980) (*en banc*).

The privilege for state secrets is sometimes also expressed in terms of injury to foreign relations. Cases actually embodying this aspect of the privilege, without military or intelligence overtones, are infrequent. The only case which actually discussed this aspect of the privilege, comparatively free of military or intelligence implications, is *Republic of China v. National Union Fire Insurance Co.,* 142 F.Supp. 551 (D.C.Md.1956). That was an admiralty action brought by the United States, as the holder of a preferred mortgage, and the Republic of China, as the owner, to recover on insurance policies issued for coverage of certain ships. In January, 1950, ten days after the British Government recognized the Chinese Communist Government (at a time when such recognition was anathema to the United States), officers and crews of the ships located in Singapore and Hong Kong defected to the Chinese Communist regime and took control of the ships under the Chinese Communist flag. The defense which led to the state secrets assertion was the insurer's claim that the United States had failed to make the reasonable efforts to recover the vessels required by the insurance policies. The interrogatory objected to by the U.S. Government was designed to disclose memorandums of conversations between American and British officials. The conversations related to a request by the American government that the British issue an "order in council," a device which would have allowed a legal action to be commenced in the Singapore or Hong Kong courts, even though the action would in effect have impleaded a foreign sovereign state. The Court upheld the privilege asserted by the Secretary of State (claiming that disclosure would be prejudicial to the foreign relations of the United States and contrary to the public interest) on the ground that the Secretary's determination was clearly justified "in view of the differences of opinion between the American and British Governments over the British recognition of Communist China and the many problems arising therefrom."

It is sufficient to say that matters relating to the question of recognition of Communist China during that period of time were matters of unusually sensitive foreign policy. There is no indication whatsoever that the material involved in this case in any way approaches that level of sensitivity.

It has been stated that national security is rarely involved in communications outside the realm of military or intelligence matters, and the Courts are the proper forums to guarantee the correct use of the state secrets privilege. *R. Berger, Executive Privilege,* 366–370 (1974). See generally, Note, *The Military and State Secrets Privilege: Protection for the National Security or Immunity for the Executive?* 91 Yale L.J. 570 (1982). It can be said that instances when commercial-oriented communications between governments rises to the level of posing threats to national security will be few and far between.

In point of fact, all indications are that this material is precisely the sort of information that can be expected to be gathered in these investigations. The Court's examination shows it to consist of material re-

garding the financial condition of two Brazilian steel companies and the question of whether they have received subsidies.

The material was supplied in connection with an investigation mandated by Congress and it forms part of the administrative record which is required to be kept and is expressly subject to judicial review. The scheme of judicial review specifically provides for the treatment of confidential or privileged information. The statutory right of judicial review given to interested parties depends on access to the administrative records, particularly where, as here, the information is, on its face, directly related to the question of whether or not subsidies were received.

In all these respects, this dispute is distinguishable from actions under the Freedom of Information Act such as *Carlisle Tire & Rubber Co. v. United States Customs Service*, Civ. Nos. 78–2001, 78–2002, 79–2024 (D.D.C. November 21, 1979) *aff'd.*, 663 F.2d 210 (D.C.Cir.1980). Whatever the validity of the reliance placed in that case on the *source* of the information rather than its *content*, that approach has no place here.[7] Congress clearly anticipated that foreign governments would be the source of information gathered in these investigations and further anticipated that much of the information would be of a confidential nature.[8] The balancing of the interest of maintaining confidentiality with the need for meaningful access for litigation purposes is easily accomplished by means of judicially controlled disclosure. When appropriate, disclosure in these actions is routinely limited to counsel for the parties and then only for use in the litigation and under secure conditions. In short, there is no need to transform confidential

matters into state secrets in this area of litigation. That would be a distortion of the state secrets privilege and an unjustified interference with the right of judicial review.

If the state secrets rationale of the federal defendants originates in respect for the foreign government's desire for confidentiality, it should be sufficiently satisfied by the protection for confidential information which exists in the law on both the administrative and judicial levels. If indeed the desires of the foreign government for confidentiality were to create state secrets in all cases, we would have the irony that the more pervasively a foreign government was involved in business production, or in participating in these investigations, the more power it would have to restrict petitioners' rights in a judicial review.

■ The potency of the state secrets privilege is such that it ought not to be granted except in cases of a palpable threat to national security just as the more exceptional powers of the executive ought not to be used except in cases of grave peril. *Halperin v. Kissinger*, 606 F.2d 1192, 1201 (D.C.Cir.1979).

For these reasons defendants' motion for an order barring disclosure is DENIED.

Because the Court's examination shows that all of this material, except for AR 4066–67, contains business confidential information, it will not allow disclosure to in-house counsel for U.S. Steel, for the reasons explained in Slip Opinion 83–76. The Court will also require that those counsel who are granted disclosure enter into a protective order similar to those entered into previously in connection with business confidential information.

---

7. The Court would prefer to read *Ceramica Regiomontana, S.A. v. United States*, 4 C.I.T. 168, 557 F.Supp. 593 (1982), as engaging in a simple weighing of need versus business confidentiality, coming out on the side of the latter. To the extent, however, that the opinion displays a less rigorous standard for establishing the existence of a state secret and accepts the *source* rather than the *content* as a determinant, this opinion must respectfully disagree. On that decision's suggestion that the state secret privilege may not be an absolute bar to disclosure to a party in this Court, this opinion must express a doubt

that Congress intended this Court to have greater powers with respect to that momentous privilege than any other court.

8. On the subject of state secrets, no meaningful distinction suggests itself between foreign governments and international agencies formed by groups of governments. Those considerations which apply to information from foreign governments must also apply to information from international agencies.

The Court has no doubt whatsoever that this material is not entitled to the privilege against disclosure of state secrets. Nevertheless, in order to demonstrate an excess of caution in dealing with a claim of this nature at a rather early stage in the development of case law in the area of international trade, the Court is willing to create an opportunity for appeal. It therefore states that this decision involves a controlling question of law with respect to which there is a substantial ground for difference of opinion. An immediate appeal from this decision may materially advance the ultimate termination of this litigation.

The effect of this decision is hereby stayed for the time allowed to make an application for appeal and, if an appeal is permitted, it is stayed pending appeal.