**CULINARY FOODS, INC., and Soledad Sagun, as Administrator of the Estate of Remigio Sagun, deceased, Plaintiffs,**

v.

**RAYCHEM CORPORATION, Defendant.**

No. 92 C 8152.

United States District Court, N.D. Illinois, E.D.

July 28, 1993.

Mary E. Gootjes, Pope & John Ltd., Chicago, IL, for plaintiffs.

Judith E. Kramer, Deputy Sol., John J. Secaras, Regional Sol. and Rafael Alvarez, U.S. Dept. of Labor, Office of the Reg. Sol., Chicago, IL, for defendant.

### MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before this court is the motion of Robert Reich, Secretary of Labor, United States Department of Labor ("Department of Labor") to quash a subpoena issued by the defendant Raychem Corporation to Ronald McCann, Area Director for the United States Occupational Safety and Health Administration.

## I. BACKGROUND

This case arises out of the January 11, 1992 fire which occurred at Culinary Foods, Inc.'s place of business located at 1240–46 W. George St. in Chicago, Illinois, and resulted in the death of Remigio Sagun, as well as extensive fire damage. Culinary Foods claims that the fire was the result of certain Raychem Corporation ("Raychem") products which were installed at the location and asserts product liabilities claims against Raychem. Raychem, which was not immediately aware of the fire and consequently could not do its own investigation, has subpoenaed certain documents from the U.S. Occupational Safety and Health Administration ("OSHA") which Raychem believes will be relevant to its defense and cross claims.

Through a previous request under the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA"), OSHA had turned over a number of documents to Raychem while withholding certain documents based upon exemptions in the Freedom of Information

Act.[1] Thereafter, on April 16, 1993, Raychem, in accordance with 29 C.F.R. 2.21, served a subpoena upon Ronald McCann, Area Director for OSHA, requesting the production of any and all documents related to Culinary Foods. Under 29 C.F.R. 2.22, no Department of Labor employee may disclose or produce any information contained in Department of Labor files without the approval of the Deputy Solicitor of Labor. On April 23, 1993, the Deputy Solicitor of Labor made a determination, pursuant to 29 C.F.R. 2.20–.25, that it would be contrary to public policy for Mr. McCann to produce the requested documents.[2] Raychem challenges the validity of the Deputy Solicitor's determination to withhold the information requested by subpoena. In response to the subpoena, the Department of Labor motions to quash the subpoena on the grounds that the information which was withheld is privileged from discovery.

## II. ANALYSIS

At the outset, it is important to distinguish between discovery under the Federal Rules of Civil Procedure and access to government information under the FOIA.[3] Although both methods for obtaining information are construed broadly to allow liberal access to information, they are by no means identical. As noted by the Supreme Court, the purpose of the FOIA was not to benefit private litigants by serving as a supplement to the rules of civil discovery. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989); See also *Miller v. Bell*, 661 F.2d 623 (7th Cir.1981) *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982). Nevertheless, FOIA exemptions and discovery privileges do have some overlap. The instant case deals with a subpoena issued under the Federal Rules of Civil Procedure and does not directly involve a challenge to an exemption designation under the FOIA.

 As a general notion, information available under the FOIA is likely available through discovery. However, information unavailable under the FOIA is not necessarily unavailable through the discovery process. As noted by Raychem, the fact that the information sought is exempt from disclosure under the FOIA does not necessarily mean that the information is exempt from discovery. *Friedman v. Bache Halsey Stuart Shields Inc.*, 738 F.2d 1336, 1344 (D.C.Cir. 1984); *Pleasant Hill v. United States*, 58 F.R.D. 97, 99 (W.D.Mo.1973). Thus, the Department of Labor cannot solely rely on FOIA exemptions to establish a privilege in discovery. *Pleasant Hill*, 58 F.R.D. at 101. In the FOIA context, a requesting party's need for information is irrelevant. On the other hand, where a qualified privilege is asserted in the discovery context, the liti-

1. In the initial Freedom of Information request, the Department of Labor relied on the following exemptions to the Act to prevent disclosure of the documents now being subpoenaed:

 (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;
 (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
 (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; and
 (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the

case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.
5 U.S.C. § 552(b).

2. The validity of similar regulations restricting disclosure of government information has been upheld. See e.g. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951); *Saunders v. Great Western Sugar Company*, 396 F.2d 794 (10th Cir.1968); *Reynolds Metals Company v. Crowther*, 572 F.Supp. 288 (D.Mass.1982). However, Raychem does not challenge the validity of the regulations.

3. We note that the Department of Labor has put a great deal of reliance on the FOIA exemptions in this case concerning discovery privileges.

gant's need is an important factor. Whether information is privileged from discovery depends on the relative weight of the litigant's need and the government's interest in confidentiality.

■■■ However, the FOIA is not totally irrelevant to the discovery process. The FOIA exemptions reflect Congressional judgment that dissemination of sensitive government information should be given more cautious treatment. Although FOIA exemptions do not equate to discovery privileges, FOIA exemptions do roughly correspond to certain discovery privileges.[4] Thus, the Congressional concerns codified in FOIA exemptions are entitled to some consideration in considering whether such information is privileged under the Federal Rules of Civil Procedure and the court should give proper weight to the policies underlying the FOIA exemptions. *Friedman*, 738 F.2d at 1344. Where discovery privileges are paralleled by certain FOIA exemptions, the balancing test weighing the litigant's need for the information against the government's interest in confidentiality should be combined with the policies underlying the FOIA exemptions. *ACLU v. Brown*, 609 F.2d 277, 280 (7th Cir.1979).

■■■ In light of this discussion, we now turn to the discovery privileges asserted by the Department of Labor. The Department of Labor claims that the documents which were originally withheld from the FOIA request are exempt from discovery based on the informant's privilege and the work product doctrine and thus, the subpoena requesting this information should be quashed. Although FOIA exemptions carry some weight in the analysis of discovery privileges, the burden of establishing a privilege remains on the opponent to discovery, in this case the Department of Labor. We stress this point due to our experience with privilege assertions in other cases. Frequently, the discovery opponent relies upon descriptions of documents at issue in a privilege log, but does not, as it should, make a colorable attempt to

meet its burden of establishing the applicability of the privilege it asserts to each of the documents it hopes to withhold from discovery. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84 (N.D.Ill.1992). In order to invoke a privilege, the party asserting the privilege has the burden of establishing all of its elements. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991), citing *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983). A claim of privilege cannot be a blanket claim, but must be made and established on a document-by-document basis. *Id.* Accordingly, we address the assertions of the informant's privilege and the work product doctrine.

### A. *Informant's Privilege*

■■■ The informant's privilege is actually the Government's privilege to withhold the identity of individuals who provide the Government with information of violations of law. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). The purpose of the informant's privilege is the furtherance and protection of the public interest in law enforcement. *Id.* The privilege is applicable in civil as well as criminal cases. *Dole v. Local 1942, International Brotherhood of Electric Workers, AFL–CIO*, 870 F.2d 368, 372 (7th Cir.1989). By ensuring anonymity, citizens are encouraged to fulfill their social responsibilities of cooperating with law enforcement officials in detecting violations of law. *Id.* Fear of reprisal of any form is best diminished by bestowing anonymity on the informant. *Id.* Furthermore, ensuring anonymity encourages citizens to cooperate with law enforcement officials. *Id.*

■■■ In the context of OSHA investigations, the informant's privilege is likewise necessary. The Government's task of enforcing safety and health regulations on the work site would be virtually impossible without the employee's cooperation and information. Common sense notions recognizes the power

4. In *EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973) the court found that discovery rules can only be applied under FOIA by rough analogies. In addition, the Supreme Court has found that Exemption 5 of the FOIA

encompasses the attorney work-product doctrine. See *F.T.C. v. Grolier, Inc.*, 462 U.S. 19, 21 103 S.Ct. 2209, 2211, 76 L.Ed.2d 387 (1983) and *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 155, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975).

of employer over employee. Thus the need for anonymity is clear. Employees would be unwilling to disclose information to OSHA for fear that they may be terminated, demoted, or retaliated against in some other manner by their employer. The informant's privilege recognizes not only physical reprisal, but "subtler forms of retaliation such as blacklisting, economic duress, and social ostracism." *Id.*

 Because of the significant policy interests, the government need not make a threshold showing that retaliation is likely to occur in order to assert the privilege. *Dole,* 870 F.2d at 372. Rather, the privilege is granted as of right. *Id.* However, the informant's privilege is not absolute. *Roviaro,* 353 U.S. at 60, 77 S.Ct. at 627. Only documents which tend to reveal the identity of an informer are protected under the privilege. *Id.* In addition, the privilege will yield "when the identification of the informant or of a communication is essential to a balanced measure of the issues and the fair administration of justice." *Dole,* 870 F.2d at 372.

### 1. *Witness Statements*

 In applying the "balance measure" test, we first address the privilege with respect to the 44 pages of witness statements.[5] In the instant case, Raychem claims that its investigation into the origin of the fire was hampered by delay. Raychem did not receive notice of the January 11, 1992, fire until a demand letter was sent by plaintiff's counsel on October 14, 1992. Raychem argues that it was thus unable to perform an adequate investigation into the cause of the fire as a result of the nine month delay.[6] Thus, they claim they have substantial need for OSHA's investigative evidence. We find that Raychem has not met the test established in

*Dole* that "the identification of the informant or of a communication is essential to a balanced measure of the issues and the fair administration of justice" in this case. *Dole,* 870 F.2d at 372. Despite Raychem's strong argument of need, we find that disclosure of the identity of OSHA informants is not necessary in light of the fact that Raychem has other remedies for seeking information regarding the cause of fire. Although Raychem could not perform its own fire investigation, Raychem can obtain discovery from other entities who performed an investigation including plaintiffs Culinary Foods, Home Insurance Company, and the Chicago Fire Department.[7] Furthermore, Raychem has already received information from OSHA under the FOIA. More importantly, Raychem has the option of serving interrogatories and deposing the employees of Raychem. Thus, Raychem can obtain the same type of information contained in the sought-after witness statements from other readily available witnesses and sources. Using this method, Raychem will be able to obtain this information without requiring the Department of Labor to disclose the identity of informants.

While Raychem has expressed concern that certain employees who were present when the fire occurred on January 11, 1992, have since departed from Raychem and may no longer be available for questioning, we still find an absence of need sufficient to justify setting aside the privilege. These individuals are still subject to normal discovery means in any event, and as mentioned above, other sources are available to defendant to obtain substantially the same information as that contained in the statements of the employees.

In taking a balanced approach to Raychem's efforts to obtain the employee statements, and the Department of Labor's oppo-

---

5. Under the previous FOIA request, the Department of Labor cited the following exemptions with respect to the witness statements: 5, 7(B), 7(C), and 7(D). See footnote 1 *supra,* for the text of these exemptions.

6. In Raychem's argument concerning the delayed investigation, Raychem raises a concern over lost evidence. Apparently, a light fixture, which the Chicago Fire Department could not rule out as the cause of fire, has been lost.

7. In light of footnote 5, it seems that Raychem has already proceeded along this route to obtain investigation information from other parties. In addition, we note that Raychem will have obvious concerns with the accuracy of Culinary's investigation because Culinary, as plaintiff, has a vested interest in the results of the investigation. However, there is no reason to question the reliability and independence of the Chicago Fire Department investigation.

sition thereto, we conclude that Raychem has not established a credible need for any of the employee statements that would overcome the important policy consideration underlying the informant privilege claimed by the Department of Labor. Accordingly, our order will not require the Department of Labor to yield its claimed privilege for the employee statements.

### 2. *Other Documents*

Of the remaining portion of the material which the Department of Labor claims is subject to the informant's privilege, we find the Department of Labor has not met its burden of establishing the privilege. As previously noted, a discovery opponent often relies upon descriptions of documents in a privilege log and fails to make a colorable attempt to meet its burden of establishing the applicability of the privilege it asserts to each of the documents it hopes to withhold from discovery. This is exactly what the Department of Labor has done.

After receiving briefs from the Department of Labor that merely discuss the general law relevant to the claimed privileges, we asked that the court be "provided with a statement describing with specificity what materials are being withheld and which privilege is asserted regarding these specific materials." (Court's June 15, 1993, Letter to the Parties). We further stated, "The description must be sufficiently detailed to allow this court to determine whether the burden of establishing the privileges has been met with respect to each and all materials

being withheld." *Id.* As it turns out, the Department of Labor simply ignored the court's request; its response to the court's directions amounted to no more than the submission of a skeletal privileged log giving mainly 2 to 15 word descriptions of the documents with corresponding exemptions under the FOIA.[8] Of the 40 distinct descriptions of documents, exemptions paralleling the informant's privilege have been cited 27 times.[9]

We conclude that the Department of Labor has failed to meet its burden of establishing the informant's privilege for two reasons. First, the Department of Labor has failed to show that the informant's privilege is applicable to these documents. Based upon the filing, the Department of Labor has only established that it has already exerted these FOIA exemptions in the previous FOIA request, not that any of these documents will in any way disclose the identity of informants. Secondly, the exemptions cited are exactly that, FOIA exemptions. As previously discussed, the fact that information is exempt under the FOIA does not necessarily mean the information is not discoverable under the Federal Rules of Civil Procedure. *Friedman*, 738 F.2d at 1344. Although we will give some weight to the underlying policies of FOIA exemptions, this alone is not enough to establish a discovery privilege. If we were to find otherwise, we would be disregarding the litigant's need for the requested material, and holding that FOIA exemptions are identical to discovery privileges.[10] In light of the Supreme Court finding that dis-

---

8. Standard examples of the Department of Labor's description of the documents and the correlating exemptions include:

| | |
|---|---|
| Diary log, 1 page | 5, 7a and 7e |
| OSHA 200 log, 14 pages | 5, 7a, 7b and 7c |
| Office memo, 1 page | 5, 7a, 7b and 7c |

9. The Department of Labor has cited FOIA exemptions 7(C) and/or 7(D) 27 times. Although our reading of the FOIA exemptions leads us to believe that 7(D) is the only exemption paralleling the informant's privilege, the Department of Labor has filed a cross reference in which they state that exemption 7(C) protects "the identification of a confidential source or confidential information furnished by a confidential . source." Thus, where 7(C) is cited, we assume the informant's privilege is being raised.

10. In *Information Disclosure in Civil Actions: The Freedom of Information Act and the Federal Discovery Rules*, 49 Geo.Wash.L.Rev. 843, 853 (1981), Toran criticizes the Seventh Circuit *ACLU v. Brown* decision for this very reason. In rejecting disclosure of certain Army intelligence information, the Court stated that the primary factor in rejecting disclosure was the FOIA exemption. *ACLU v. Brown*, 609 F.2d at 283. Toran argues that this language suggests that the Seventh Circuit is "circumvent[ing] the numerous decisions holding that an FOIA exemption does not amount to a discovery privilege." *Id.* We do not believe that the Court's language that the "balancing test ... must be combined with the FOIA" was merely lip service. We believe that the Court considered the needs of both parties and determined that, under the facts of that case, the balance of interests weighed in favor of the Government.

covery rules can only be applied under FOIA by rough analogies, we decline to do this. *EPA v. Mink,* 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973). Thus, we reject the Department of Labor's motion to quash the subpoena with respect to the 27 classes of information in which the informant's privilege is asserted.[11]

### B. *Work Product Doctrine*

The Department of Labor claims that certain documents are being withheld pursuant to the work product doctrine.[12] Raychem alleges that the Department of Labor cannot raise the work product privilege because it is not a party to the litigation and Rule 26(b)(3) provides that only parties to the litigation and their agents can raise the work product doctrine.[13] In support of this, Raychem cites *In re Subpoena Served on the California Public Utilities Comm'n,* 892 F.2d 778 (9th Cir.1989) in which the Court found that a government agency, that was not a party to the litigation, could not raise the privilege. The Ninth Circuit found that a literal reading of the rule limits its protection to one who is a party or a party's representative to the litigation in which discovery is sought. *Id.* at 781. The Court rejected California Public's argument that even though it is not a party to the litigation, the policy behind Rule 26(b)(3), which is to safeguard the attorney-client relationship by enabling attorneys to record their thoughts and advice candidly and completely, requires that the materials be protected from discovery. *Id.* In this case, although the Department of Labor is not a party to the instant litigation, we need not base our decision on the Ninth Circuit holding.

█ In the Department of Labor's brief asserting the work product doctrine, the Department of Labor has cited a number of cases discussing the work product doctrine and the requirement that the documents be prepared in anticipation of litigation. However, despite adequate opportunity to do so, the Department of Labor has failed to appropriately apply the doctrine to the documents in question. We conclude that it has failed to establish that the requested documents were in fact prepared in anticipation of litigation. Again, we note that in response to our request for a specific description of documents sufficiently detailed to allow this court to determine whether the burden of establishing the privileges has been met with respect to each and all materials withheld, the Department of Labor submitted its skeletal privilege log giving only 2 to 15 word descriptions of the documents with the corresponding FOIA exemptions, and of the 40 distinct descriptions of documents, the exemption paralleling the work product doctrine was cited 37 times—no discovery privilege was discussed.[14] Although exemption 5 of the FOIA encompasses the work product doctrine, mere assertions of privilege are not enough.

█ The Department of Labor has not established that the documents for which it

---

**11.** In deference to our strong commitment to the policy consideration of the informant's privilege, if any document may contain the name, address, job description or other related information which might reveal the identity of the employee, such information can be redacted from the documents to be produced.

**12.** The Department of Labor had not raised the work product doctrine until it filed its response brief, thus forcing Raychem to file a surreply brief. We note that we have given due consideration to both briefs and question the reason for the delayed raising of the issue, especially in light of the substantial number of documents allegedly subject to the privilege.

**13.** Rule 26(b)(3) provides that:

a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

**14.** As noted in footnote 3, exemption 5 of the FOIA encompasses the attorney work-product doctrine.

claims work product privilege were prepared in anticipation of litigation. Furthermore, it is not the court's burden to establish the applicability of the privilege to the documents by engaging in a factual and legal analysis on the discovery opponent's behalf. See *Holzman v. Jaymar–Ruby, Inc.*, 916 F.2d 1298, 1303 (7th Cir.1990). What we have been provided with is a privilege log citing FOIA exemptions without any discussion of any anticipation of litigation. This is, of course, an insufficient showing to establish entitlement to the claimed privilege claim. *Allendate Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. at 86–87.

▮▮▮▮▮ In determining whether a document is subject to the work product doctrine, the threshold determination is whether the document was prepared in anticipation of litigation. *Binks Mfg. Co. v. Nat. Presto Industries Inc.*, 709 F.2d 1109, 1118 (7th Cir.1983). Because one of the general purposes of OSHA is to investigate work related deaths and injuries, no clear cut rule can be established for determining whether these investigations fall under the work product doctrine. That an investigation was conducted does not alone cloak the documents prepared by an attorney as work product. *McLaughlin v. Miles Laboratories, Inc.*, 124 F.R.D. 629, 630 (N.D.Ind.1988) citing *Binks*, et al. Here, the issue is whether the Department of Labor was merely conducting a routine investigation or preparing for a lawsuit. There is no indication in any document filed by the Department of Labor that it was preparing for litigation. Although there was in fact a fire, there has been no showing by the Department of Labor of any specific safety violation which it was preparing to litigate. Without any indication that there was a violation, the document cannot be considered work product. In fact, many Department of Labor matters are not considered for litigation in any event until after an investigation reveals violations. *Martin v. Albany Business Journal, Inc.* 780 F.Supp. 927, 941–943 (N.D.N.Y.1992). And in OSHA cases, litigation is generally contemplated only after the employer refuses to recognize or correct safety violations.

If we were to grant the Department of Labor's motion to quash subpoena upon what it has thus far filed with the court, this would be tantamount to holding that all Department of Labor investigative reports are prepared in anticipation of litigation and thus are insulated from discovery. This we decline to do.

The Department of Labor has had two separate opportunities to submit appropriate materials to properly invoke the work product privilege. It was unable to do so on each occasion—even after being given specific court directions on how to properly claim a discovery privilege (p. 126, *supra*). Accordingly, we find little merit to the Department of Labor's motion to quash the subpoena with respect to the documents alleging work product privilege, and as such it will be denied.

### III. CONCLUSION

Based on the foregoing, the motion to quash the subpoena is denied with respect to all documents except the 44 pages of witness statements. The Department of Labor is hereby ordered to turn over all other subpoenaed documents (with possible redaction as mentioned in footnote 10 *supra*,) less all witness statements.