**Elizabeth DOLE, Secretary of Labor, United States Department of Labor,\* Plaintiff–Appellant,**

v.

**LOCAL 1942, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Defendant–Appellee.**

No. 88–1610.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 3, 1989.

Decided Feb. 28, 1989.

---

\* When this suit was filed, the plaintiff was Secretary of Labor William E. Brock. He was succeeded by Ann McLaughlin who was recently succeeded by Elizabeth Dole. See Rule 25(d) of the Federal Rules of Civil Procedure. We will refer to them collectively as the Secretary.

Helene Boetticher, Office of the Sol., Dept. of Labor, Washington, D.C., for plaintiff-appellant.

Joel A. D'Alba, Asher Pavalon Gittler & Greenfield, Ltd., Chicago, Ill., for defendant-appellee.

Before CUMMINGS, POSNER and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

The Secretary of Labor ("Secretary") appeals from the involuntary dismissal of a civil action under Section 401 of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 481 *et seq.*, brought by the Secretary against Local 1942 of the International Brotherhood of Electrical Workers ("Union"). The dismissal by the district court resulted from the Secretary's refusal to comply with a discovery order instructing her to release the names of individuals who gave witness statements to the Secretary's agents. The Secretary argues that because the Union did not establish a particularized showing of need, the identities of those individuals are protected by the informer's privilege; consequently, it was an abuse of discretion for the district court to order production, as well as dismiss the action when the Secretary refused to comply. We agree with the Secretary and reverse the decision of the district court.

**I**

On June 17, 1986, the Union held an election of officers subject to the provisions of Title IV of the LMRDA, 29 U.S.C. § 481 *et seq.* Edward Keller, a member of the Union and unsuccessful nominee for Union president,[1] filed an internal union complaint protesting the election, which was not acted upon by the Union, and later complained to the Department of Labor, which resulted in this suit.

Keller objected to a decision by the local leadership,[2] announced one day prior to the

1. Keller is now the Union president, having won the most recent election, held on June 24, 1988. The rule which was enforced in the 1986 election and the subject of this action was repealed and not in effect during the 1988 election. Nonetheless, the issue is not moot since a superseding election which is not conducted under the supervision of the Department of Labor does not quash whatever infirmities were purported to have occurred in a prior election. See *Wirtz v. Glass Bottle Blowers Ass'n*, 389 U.S. 463, 475, 88 S.Ct. 643, 650, 19 L.Ed.2d 705.

2. In its brief the Union states that the decision was made by the International, not the local

May 13, 1986, nomination meeting, to enforce a then suspended rule which required all candidates for office to have attended a minimum number of meetings during the previous year. The decision to enforce the rule resulted in the disqualification of several candidates, among them Keller. This prompted a written protest by more than six hundred Union members in May; Keller was among those protesting. The Union denied these protests on June 3, 1986. On June 23, 1986, one week after the election, Keller filed an internal union appeal. The Union failed to resolve Keller's appeal by September 23, 1986, and Keller accordingly became eligible to file a written complaint with the Department of Labor under 29 U.S.C. § 482,[3] which he did on that date. After investigating Keller's complaint, the Secretary filed this action against the Union in federal district court challenging the decision to enforce the nomination rule as a violation of 29 U.S.C. § 481(e) requiring candidacy qualifications to be "reasonable * * * [and] uniformly imposed."

During discovery the Union requested certain information from the Secretary through interrogatories. A discovery dispute, which remains the crux of this appeal, developed over the Union's request for the identity of those Union members who participated in the investigation and for the production of all documents relating thereto. The Secretary refused to answer those interrogatories (or parts thereof) which sought to ascertain the identities of those Union members who assisted the Department of Labor in its investigation, as well as the information they provided. The Secretary's objections were based upon the premise that:

> such information is protected from disclosure by the informer's privilege and work product privilege and therefore is not subject to discovery under Rule 26(b)(1) and Rule 26(b)(3) of the Federal Rules of Civil Procedure.

(Br. 2). This distinction is irrelevant to the issues before us.

**3.** 29 U.S.C. § 482(a) limits Department of Labor investigations to union member complainants who have exhausted the remedies available un-

(R. Item 19, attachment). However, in response to two other interrogatories, the Secretary did produce a list of those individuals who had knowledge of information, documents or communications relating to the complaint filed by Keller with the Secretary. In a preface to the list of twenty-five individuals with possible "knowledge of the facts of this case," only six of whom were local rank and file members, the Secretary replied that no representation was being made that:

> [the Department of Labor] did, in fact, speak to any of these persons or, in any other way, does [the Department of Labor] identify any of them as providing information to the [Department of Labor] during the course of [the] investigation. Such response is not intended to be a waiver of the informer's privilege with respect to the identity of any individuals actually interviewed during the course of [the] investigation.

(*Idem*). Consequently, the Union has discovered the identity of those persons of whom the Department of Labor is aware with relevant information concerning Keller's complaint, including six of his colleagues. But the Union maintains that it is still entitled to the identities of other Keller colleagues who gave information relevant to the election in issue to the Department of Labor, as well as the substance of the information.

The Secretary filed a motion for a protective order against the release of the information, citing the informer's privilege. In support of its motion to compel disclosure of the informers' statements, the Union argued that the statements were required to defend against the allegation in the complaint that the election protest was filed with the Secretary of Labor in a timely manner. According to the Union such statements might enable it to determine if Keller or anyone else had initiated internal union remedies prior to June 23, 1986, the date Keller filed his complaint with the

der the constitution and bylaws of the union, or have invoked those available remedies without a final decision within three months of their invocation.

Union (R. Item 19 at 3–4).[4] The Union argues that this information may establish that either Keller or others acting in concert with Keller approached the Department of Labor following the preelection protest, which was denied by the Union on June 3, 1986. Such information conceivably could show that the Department of Labor received an earlier complaint. This argument is grounded on 29 U.S.C. § 482(a), which requires the Secretary to bring a civil action within sixty days of receipt of a complaint from a union member. The Union argues that if it can establish that a "complaint" was received by the Department earlier than September 23, 1986, the date of Keller's complaint, the Secretary's present action is time-barred.

Further, since the LMRDA does not define "complaint," the Union argues that typical formalities, *e.g.*, a signed writing, may not be necessary for a complaint to the Department as envisioned by the LMRDA. Thus the Union maintains that it should be allowed to discover all informer statements to determine if a "complaint," however defined, was filed prior to the one which triggered this lawsuit. The Union also argues that if the witness statements reveal that the Department of Labor intentionally dissuaded anyone from filing a complaint until after the election, such administrative action could also be tantamount to a complaint for the purpose of computing the start of the time limitations period.

The district court, over the Secretary's objection, granted the Union's motion to compel disclosure and denied the Secretary's motion for a protective order on December 21, 1987. On a hearing for reconsideration on January 7, 1988, the district court maintained its decision to grant the Union's motion to compel, but indicated that it would enter a protective order forbidding counsel for the Union from disclosing the resulting information to Union officials.

On January 23, 1988, with the order to compel in effect, counsel for the Union deposed an employee of the Department of Labor. Upon advice of counsel from the Department of Labor, the deposition witness declined to respond to questions from the Union's counsel which were designed to elicit information concerning the names of individuals who provided witness statements to the Department of Labor. Thereafter the Union moved to dismiss the lawsuit, which the district court granted on January 26, 1988, because of the failure of the Secretary to comply with the discovery order.

II

A.

District courts have broad discretion in matters relating to discovery. *Brown–Bey v. United States,* 720 F.2d 467, 470–471 (7th Cir.1983); *Eggleston v. Chicago Journeymen Plumbers' Local Union 130,* 657 F.2d 890, 902 (7th Cir.1981), certiorari denied, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134. On review, courts of appeal will only reverse a decision of a district court relating to discovery upon a clear showing of an abuse of discretion. *Indianapolis Colts v. Mayor and City Council of Baltimore,* 775 F.2d 177, 183 (7th Cir. 1985). Similarly, Federal Rule of Civil Procedure 37(b) permits a district court to dismiss a case upon a showing of "willfulness,

---

**4.** The Union argued in support of its motion before the district court that it needed the statements to determine if any other member had filed an earlier internal union complaint (*idem*). This rationale obviously lacks merit since the Union would be in the best position to assess whether any of its own members had filed an internal protest with the Union leadership. During the January 7, 1988, hearing in the court below, the Union also argued that the Secretary's action might be time-barred if the Department had received complaints prior to Keller's September 23, 1986, complaint to the Department. Consequently, it urged the district court to release the informers' statements in order to ascertain the date on which the first complaint was filed with the Department of Labor, and not with the Union as it had argued in its motion papers. In its brief on appeal (Br. 13–14), the Union maintains its argument that this information is necessary to determine whether any pertinent complaints were received by the Department of Labor prior to Keller's complaint and abandons its argument below—for good reason—that the discovery in issue is necessary to discover its own internal records.

bad faith or fault on the part of the non-complying party." *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 640, 96 S.Ct. 2778, 2779, 49 L.Ed. 2d 747 (*per curiam*); *Societe Int'l v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255; *Roland v. Salem Contract Carriers, Inc.,* 811 F.2d 1175, 1179 (7th Cir.1987). The decision of a district court to dismiss a case under Rule 37(b) is also reviewed under the abuse of discretion standard. *National Hockey League,* 427 U.S. at 642, 96 S.Ct. at 2780; *Sere v. Board of Trustees of Univ. of Illinois,* 852 F.2d 285, 289 (7th Cir.1988). These apparently distinct actions meld into a single analysis if the district court abused its discretion in formulating a discovery order, because, *a fortiori,* such an abuse of discretion will not support a Rule 37(b) dismissal.

## B.

■ The doctrine of the informer's privilege is not a recent phenomenon, having its roots in the English common law. See 3 Russell on Crimes 592–593 (6th ed. 1896). The underlying concern of the doctrine is the common-sense notion that individuals who offer their assistance to a government investigation may later be targeted for reprisal from those upset by the investigation. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The privilege recognizes the responsibility of citizens to cooperate with law enforcement officials and, by providing anonymity, encourages them to assume this responsibility. With the threat of reprisal real and unprotected against, well-intentioned citizens may hesitate or decline to assist the government in tracking down wrongdoers. The threatened reprisal may be physical, but the privilege also recognizes the subtler forms of retaliation such as blacklisting, economic duress and social ostracism. See *Usery v. Local 720, Laborers' International Union of North America,* 547 F.2d 525, 527 (10th Cir.1977), certiorari denied, 431 U.S. 938, 97 S.Ct. 2649, 53 L.Ed.2d 255; *Hodgson v. Charles Martin Inspectors of*

*Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir.1972); *Wirtz v. Continental Finance & Loan Co.,* 326 F.2d 561, 563–564 (5th Cir.1964); *Mitchell v. Roma,* 265 F.2d 633, 637 (3d Cir.1959). The most effective means of protection, and by derivation the most effective means of fostering citizen cooperation, is bestowing anonymity on the informant, thus maintaining the status of the informant's strategic position and also encouraging others similarly situated who have not yet offered their assistance. *United States v. Tucker,* 380 F.2d 206, 213 (2d Cir.1967); *Continental Finance & Loan,* 326 F.2d at 563–564; *Usery v. Local 720,* 547 F.2d at 527.

■ The privilege is applicable in civil as well as criminal cases. *Hampton v. Hanrahan,* 600 F.2d 600, 637 & n. 40 (7th Cir.1979), reversed in part on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670; *In re United States,* 565 F.2d 19, 22 (2d Cir.1977) (citations omitted). In civil cases the privilege, which limits the right of disclosure usually called for by the Federal Rules of Civil Procedure, is arguably greater (see *Hampton, supra; In re United States,* 565 F.2d at 22 and authorities cited therein; *Wirtz v. Robinson & Stephens, Inc.,* 368 F.2d 114, 116 (5th Cir. 1966)) since not all constitutional guarantees which inure to criminal defendants are similarly available to civil defendants.

■ When asserting the privilege the government need not make a threshold showing that reprisal or retaliation is likely, because of the significant policy consideration behind the privilege, as well as the difficulty of such proof. Rather, the government is granted the privilege as of right. See, *e.g., Rovario,* 353 U.S. 53, 77 S.Ct. 623; *Brock v. R.J. Auto Parts and Service,* 864 F.2d 677 (10th Cir.1988); *In re United States,* 565 F.2d at 22–23; *Usery v. Ritter,* 547 F.2d 528 (10th Cir.1977). But the privilege is qualified; it yields when the identification of the informant or of a communication is essential to a balanced measure of the issues and the fair administration of justice. *Rovario,* 353 U.S. at 60–61, 77 S.Ct. at 628 ("Where the disclosure of

the informer's identity, or the contents of his communication is relevant and helpful to the defense of an accused, the privilege must give way"); *In re United States*, 565 F.2d at 22–23. The party opposing the privilege may overcome it upon showing his need for the information outweighs the government's entitlement to the privilege. *Hampton*, 600 F.2d at 636–637. The district judge must take a balanced approach and in the end decide whether the party opposing the privilege has credible need for the information in order to defend itself in the action—a need greater than the important policy consideration underlying the privilege. The privilege will not yield to permit a mere fishing expedition, *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974), nor upon bare speculation that the information may possibly prove useful, *United States v. Prueitt*, 540 F.2d 995, 1003 (9th Cir.1976), certiorari denied, 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780.

### C.

■ The LMRDA, 29 U.S.C. § 482(a) and (b), provides that after a union member has received unfavorable results from an internal union protest,[5] he may file a complaint with the Secretary within one calendar month alleging a violation of 29 U.S.C. § 481. The Secretary is charged with investigating a complaint once received and, if probable cause is found, instituting a civil lawsuit within sixty days.[6] In her complaint the Secretary pleaded that Keller's complaint to the Department was within the prescribed time limitation (R. Item 1 at VII). She alleges that Keller complained to the Department on September 23, 1986, and, after investigating, the Department brought suit on November 21, 1986.

The Union contends that without disclosure of the names and communications of all Union members who cooperated with the Department of Labor, it will be unable to defend itself against the Secretary's position that her complaint was timely filed. Although the Union has been less than clear or consistent during the history of this dispute as to how this information will shed light upon the timeliness of the Department of Labor's action on behalf of Keller's complaint,[7] one specious line of reasoning has remained throughout the arguments and is pressed most vigorously here on appeal: If the Department of Labor had received other complaints prior to Keller's September 23, 1986, complaint, then the present action may be timebarred by virtue of the sixty-day statute of limitations governing the Secretary in the applicable statute.[8] Furthermore, since the term "complaint" is not defined in the LMRDA, the Union wants all communications so that it can then argue whether any of them, possibly even including telephone calls, constituted a complaint under 29 U.S. C. § 482. The Union also contends that at an early time the Department of Labor may have counseled union members to forestall complaining to the Department

---

**5.** The unfavorable result may be in the form of a denial, § 482(a)(1), or the union's failure to determine the matter finally within three months of the filing of the internal protest, § 482(a)(2).

**6.** The sixty-day period following the date of the filing of the complaint with the Department of Labor is a statutory limitation period within which the Secretary may file a suit. 29 U.S.C. § 482.

**7.** See *supra* note 4.

**8.** The Union contends that Keller, along with in excess of 600 union members, filed an internal union protest on May 30, 1986, which was denied on June 3, 1986. Assuming that the above is true, Keller, as well as about 600 other Union members, was eligible to complain to the Department of Labor as early as June 3, 1986, the date on which the Union members had exhausted their internal appeals process. The Union then argues that Keller was in contact with the Department of Labor at least as early as June 18, 1986, and had informed Department agents of the unsuccessful internal protest. Accordingly, the Union asserts that Keller's earlier communication may constitute a complaint, or some of the informants that the Department of Labor is now protecting likely represent some of the 600 Union members who were eligible to complain to the Department after June 3; if any of those informants did in fact complain earlier, then the Department would have had to have brought its suit within sixty days following the date of the first complaint to the Secretary according to the Union.

until a later date, again causing the running of the sixty-day limitations period according to the Union. In sum, if any of these events occurred after June 3, 1986, when the Union members first became eligible to complain to the Department of Labor, and before the time Keller filed his complaint with the Secretary which is the subject of this lawsuit, then this suit is time-barred according to the Union. As will be seen, this reasoning is clearly flawed.

As for any prior communications Keller may have had with the Department of Labor, the Secretary does not suggest that they would be protected by the informer's privilege and she has turned over or will turn over all such communications (Jan. 7, 1988, Tr. 6). As related previously, the informer's privilege protects those informants who have cooperated with government investigators by preserving their anonymity. In contrast, a formal complainant like Keller has by this process identified himself and thus would not be served by a post-hoc facade of anonymity.[9]

But what of the anonymous informants —those individuals who chose to come forward and cooperate with the government in its investigation? The Union argues that it needs the communications and identities of those people to ascertain whether this action is timely. We disagree. The time limitation set in the LMRDA, 29 U.S.C. § 482, specifically addresses individual union members, not causes of action. A "member of a labor organization" may initiate a complaint with the Department of Labor, which can ultimately sue on the member's behalf. The Act in no way limits its applicability to a single complaint per arguable violation. Assuming in this case

that the Department of Labor had in fact received other complaints from other members of the Union, these other complaints would in no way have diminished or impacted upon Keller's rights, which derive directly from the LMRDA. Keller's rights under the statute are not subrogated to the rights of the first complainant, if in fact there was a prior complainant to the Department. Since other Union members' complaints will not disserve Keller's, the Union's contention that all other communications are needed to discern which might represent a "complaint" to the Department is rendered nugatory.[10] See *Trbovich v. United Mine Workers*, 404 U.S. 528, 539, 92 S.Ct. 630, 636, 30 L.Ed.2d 686: The "statute gives the *individual union members* certain rights against their union, and 'the Secretary of Labor in effect becomes the union member's lawyer' for purposes of enforcing those rights" (quoting remarks of Sen. John Kennedy, 104 Cong.Rec. 10947) (emphasis added). Therefore, the information sought is entirely irrelevant to the Union's defense, so that the requisite substantial need for overruling the informer's privilege has not been demonstrated.

### III

The Union also claims that even if it is unsuccessful in its argument that the informer's privilege should yield to its claimed need, the Secretary has in any event waived it. The Secretary, in response to an interrogatory, identified all persons having "knowledge" of this matter. The list of individuals was made up of Department of Labor investigators, officials of the Union and its international, the election judge and six members of the Un-

---

9. See *infra* text discussing waiver.

10. The Union's argument, if sustained, would have the result of completely eradicating the informer's privilege. If other complaints to the Department could affect Keller's, and if the term complaint to the Department were as ambiguous as the Union claims, every communication in every suit would be discoverable, even, as the Union seeks here, telephone conversations. The Union's argument would have a single telephonic inquiry to the Department of Labor by a union member concerning an election

not simply discoverable, but it would also be the putative complaint for the entire election; all other complainants would be subordinated to the telephonic inquiry. The bizarre, yet entirely possible, result would be that while the telephonic inquirer might be the most concerned with anonymity, if he is construed as the complainant, no anonymity will be extended. Then later putative traditional complainants are legally hamstrung by the earlier phone call, but are granted anonymity as informants by attempting to file a public complaint!

ion. The Union claims that, assuming this is a complete list of all persons knowledgeable, these six members must be informants relied upon by the Department of Labor agents. Since the informer's privilege is waived once the identity of the informer is disclosed, *Rovario*, 353 U.S. at 60, 77 S.Ct. at 627, the Union argues that the Department of Labor, by identifying these people, has waived the privilege.

The Secretary's predecessor,[11] however, expressly raised the privilege in his answer to the interrogatories which provided the list of people knowledgeable about this matter. His answer had been limited to persons with *knowledge* of this matter and listed no informers at all. The Secretary prefaced his answer in question by noting:

> Plaintiff [Secretary] is not making any representation that he did, in fact, speak to any of these persons or, in any other way, does he identify them as providing information to plaintiff during the course of his investigation. Such response is not intended to be a waiver of the informer's privilege.

(R. Item 19, attachment at 7). It is impossible to believe that a waiver of the privilege has occurred when the government, in the statement allegedly waiving the privilege, expressly invoked it!

■ While *Rovario* impliedly endorses the notion that identifying the informants is tantamount to waiver of the privilege, the Union would have us do here what the Court in *Rovario* refused to do. In *Rovario*, the Supreme Court did not determine that the privilege had been waived by the government in light of conflicting information as to whether the defendant was aware of the identity of the informant. See 353 U.S. at 60 and n. 8, 77 S.Ct. at 627 and n. 8. See also *Brock v. Lodge 647, International Brotherhood of Boilermakers*, No. 3–84–1245, unpublished op. (D.Minn. Aug. 25, 1985). In the absence of an express identification, death, or perhaps overwhelming evidence as to the identity of the informant, it cannot be assumed that the privilege has been waived where the Secretary's answer did not even disclose the identity of any informers but only named persons with "knowledge" of this matter and simultaneously reasserted the informer's privilege.

If the Secretary had named the individuals as informants, there would be no problem in finding that the privilege had been waived. But merely labeling these individuals as "knowledgeable," while expressly invoking the informer's privilege, is obviously not tantamount to waiver. That these individuals are knowledgeable does not mean, as the Secretary pointed out in the preface to the answer to the interrogatory and again in her brief on appeal, that those people actually supplied information to the Secretary.

## IV

The informer's privilege will yield upon a showing of substantial need. This the Union has failed to make. Since the potential Union defense presented here is untenable under the LMRDA, upholding the Secretary's privilege will not hinder the Union's posture in this action. There has simply been no showing whatever that the material sought is relevant to any claimed Union defense under the LMRDA. Nor was the informer's privilege waived when the Secretary, while attempting to comply fully with the rules governing discovery, offered a list of individuals "knowledgeable" of the matter at hand and at the same time declined to waive the privilege.

The error of the district court is not diminished or cured by the court's offer to the Secretary of a protective order which would have prohibited the Union's counsel from disclosing the identities of the informers to Union officials. There is no sliding scale approach to the privilege; upon sufficient showing it yields; without this showing or a waiver, the privilege remains uncompromising. The welfare of forthright citizens should not lie in the care of counsel neither known nor trusted by them, partic-

---

**11.** William Brock was then Secretary of Labor. He was succeeded by Ann McLaughlin who has been succeeded by Elizabeth Dole.

ularly since the district court failed to balance the interests of the parties.

For the above reasons the district court abused its discretion by compelling discovery. Because the action was involuntarily dismissed based upon an abuse of discretion, the dismissal was also error.

The decision of the district court is reversed.