UNITED STATES of America, Plaintiff,

v.

SOUTH SIDE FINANCE, INC., also known as South Side Credit, Inc., and All Assets Thereof, Including, But Not Limited to: 6801–05 South Western Avenue, Chicago, Illinois, All Bank Accounts, Including Checking Accounts 0056962 and 0070869 at the Marquette National Bank, the Contents of All Safe Deposit Boxes, Including Box 2786 and 3254 at the Marquette National Bank, All Motor Vehicles and Equipment, A Condominium at 11110 South 84th Avenue, Unit 3B, Palos Hills, Illinois, and $107,000.00 in United States Currency, Defendants.

No. 90 C 6203.

United States District Court, N.D. Illinois, E.D.

Jan. 29, 1991.

Fred Foreman, U.S. Atty., Craig A. Oswald, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Edward M. Genson, Marc W. Martin, Genson, Steinback & Gillespie, Chicago, Ill., for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

In this civil forfeiture action, the government seeks forfeiture of the defendant property South Side Finance, Inc. ("South Side Finance") and all of its assets, a condominium in Palos Hills, Illinois, and $107,000 in United States currency, pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981. Claimants Mohammed Bustami, Fakher Bustami, Mustafa Bustami, Kamal Bustami, and Zainab Bustami (collectively, "the claimants") move to dismiss the complaint on several grounds.

## BACKGROUND

According to the complaint, South Side Finance is a used car dealership located on Chicago's south side.[1] Mustafa Bustami is South Side Finance's sole stockholder. According to two government confidential informants, South Side Finance operates as a cocaine supplier. One of the informants reported to Kevin Moss, a special agent

---

1. On a motion to dismiss, the court accepts the well-pleaded factual allegations of the complaint as true. *Gillman v. Burlington Northern R.R. Co.,* 878 F.2d 1020, 1022 (7th Cir.1989).

with the Internal Revenue Service ("IRS"), that on several occasions during 1988, he delivered cash in excess of $100,000 to Mustafa Bustami at South Side Finance in exchange for more than six kilograms of cocaine. Complaint ¶ 8; affidavit of Kevin Moss, attached as exhibit A to government's first amended verified complaint ("Moss aff.") ¶ 7. After giving the money to Mustafa Bustami, the informant received the cocaine from an individual driving a vehicle bearing dealer license plates. Moss aff. ¶ 8. On one occasion, the informant received cocaine directly from Mustafa Bustami while in the South Side Finance office. *Id.*

According to both confidential informants, the cocaine dealers for whom they worked purchased cars from South Side Finance with cash. Complaint ¶ 9. Telephone records from June through August 1990 show four calls from South Side Finance to one of the cocaine dealer's pager, and five additional calls to his residences. *Id.* Drug Enforcement Administration ("DEA") agents established other contacts between South Side Finance and a cocaine supplier through two additional confidential informants. *Id.* at ¶ 10. Telephone records from February through September 1990 evidence 80 calls from South Side Finance to this cocaine supplier's pager, place of business, and residences. Moss aff. ¶ 12.

From August through October 1990, law enforcement agents conducted surveillance of Mustafa and Mohammed Bustami at South Side Finance and at other locations. According to the complaint,

The surveillance revealed a pattern of suspicious activity which includes meetings with convicted drug dealers, constant activity at the car lot with few cars being driven or sold, and the transporting of black canvas gym bags by Mustafa and Mohammed Bustami to and from South Side Finance. Mustafa and Mohammed Bustami have been repeatedly seen carrying the black canvas gym bags between the office of South Side Finance and the trunks of cars which they are driving. The Bustamis then drive the cars containing the black canvas gym bags to several residences and other locations in the area.

Complaint ¶ 11.

On August 6, 1990, the Marquette National Bank alerted IRS agents to a series of financial transactions conducted by South Side Finance. *Id.* at ¶ 12. Bank records for 1989 and 1990 reveal 354 separate deposits of amounts between $9,000 and $9,999, just below the $10,000 limit needed before a Currency Transaction Report is required by law. In addition, numerous deposits just below the $10,000 limit were made on the same day at different branches of the same bank. *Id.;* Moss aff. ¶¶ 14–15. On October 22, 1990, three cash deposits made by South Side Finance to the Marquette National Bank were tested under controlled conditions by narcotics trained dogs. Complaint ¶ 13. The dogs reacted positively to all three cash deposits, indicating the presence of narcotics residue or odor on the money. *Id.*

Finally, on October 25, 1990, a search warrant was executed at a condominium located in Palos Hills, Illinois. The warrant was based on surveillance establishing that the Bustamis transported black canvas gym bags between South Side Finance and the condominium. *Id.* at ¶ 16, Count IV. During the search, agents recovered three packages of United States currency, and "traces of a white powdered substance believed to be cocaine at various locations in the condominium." *Id.* at ¶ 17.

## DISCUSSION

 On a motion to dismiss, the court is not required to accept the plaintiff's legal conclusions. *Capalbo v. PaineWebber, Inc.,* 694 F.Supp. 1315, 1318 (N.D.Ill.1988). Dismissal is proper if it appears beyond doubt that the government can prove no set of facts in support of its claim that would entitle it to the relief requested. *Illinois Health Care Ass'n v. Illinois Dep't of Public Health,* 879 F.2d 286, 288 (7th Cir.1989), citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In addition, if the com-

plaint fails to allege a necessary element required to obtain relief, dismissal is in order. *R.J.R. Service, Inc. v. Aetna Cas. and Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989). The claimants have the burden of establishing the legal insufficiency of the complaint. *Yeksigian v. Nappi*, 900 F.2d 101, 104–05 (7th Cir.1990).

## I. Adequacy of complaint

■ Ordinarily, the degree of specificity required of a civil complaint is governed by the liberal notice pleading standards of the Federal Rules of Civil Procedure. Fed.R. Civ.P. 8; *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985). However, civil forfeiture complaints are *in rem* and are governed by 28 U.S.C., Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"). 21 U.S.C. § 881(b). The Supplemental Rules are part of the Federal Rules of Civil Procedure. Under Supplemental Rule E(2)(a),

> In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

■ The government's forfeiture action is based on 21 U.S.C. § 881(a)(7), authorizing forfeiture of property used to facilitate federal narcotics violations, and 18 U.S.C. § 981(a)(1)(A), authorizing forfeiture of property involved in prohibited financial transactions. In order to satisfy the pleading requirements of Supplemental Rule E(2)(a), the government need only allege facts tending to support the statutory forfeiture requirements. *United States v. A Parcel of Real Property Commonly Known As: 3400–3410 West 16th Street, Chicago, Illinois*, 636 F.Supp. 142, 146 (N.D.Ill.1986). The allegations must set forth a reasonable basis for believing that the property is subject to forfeiture. *Id.*

The authorities relied upon by the claimants are clearly distinguishable from the present case. For example, in *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 638–39 (1988), the court dismissed the government's complaint, finding that it merely described the property, recited the statutory language, and concluded that the property was forfeitable. Likewise, in *United States v. $38,000.00 in United States Currency*, 816 F.2d 1538, 1547–1549 (11th Cir.1987), the court dismissed the complaint, concluding that it was completely devoid of factual support for the government's allegations, and contained "not even a whiff of evidence to suggest that the currency is in any way linked to the exchange of a controlled substance." In *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210 (10th Cir.1986), the government brought civil forfeiture proceedings against $39,000 in Canadian currency and two cars. Regarding the currency, the court held that the complaint failed to assert any facts to support a reasonable inference that the money was involved in a drug transaction. *$39,000*, 801 F.2d at 1220. "It specifies no date or location or any purported or intended exchange, no specific type or quantity of controlled substance, and no identified participant." *Id.* As to the cars, the complaint contained only vague, incomplete, and disjointed accusations; the court concluded that it was impossible for the claimant to file a meaningful response or conduct a thorough investigation. *Id.* The claimants' remaining authorities, *United States v. Certain Real Property Located at 2323 Charms Road, Milford Township*, 726 F.Supp. 164 (E.D.Mich.1989), and *United States v. Banco Cafetero Intern.*, 608 F.Supp. 1394 (S.D.N.Y.1985), also involve complaints that were dismissed because they were wholly devoid of factual support and specificity.

■ In this case, the government's complaint satisfies the pleading requirements of Supplemental Rule E(2). The complaint contains specific information about the date and location of drug transactions and the amount of money and cocaine exchanged. The complaint identifies the participants and their connection to the property sought to be forfeited. The complaint describes in sufficient detail the illegal bank transactions that were allegedly accomplished through the use of the defendant property.

Finally, Agent Moss' affidavit, attached to the complaint, contains additional facts alerting the claimants to the precise nature of the government's claim against their property. In short, the complaint reasonably supports the government's claim that the defendant property should be forfeited and provides the necessary details to allow the claimants to file a responsive pleading and undertake an investigation.

■ The claimants argue that they cannot conduct an investigation of the facts without knowing the identity of the government's informants. The government counters that it has a qualified privilege to withhold the identity of its confidential informants. In *Dole v. Local 1942, IBEW,* 870 F.2d 368, 372 (7th Cir.1989), the Seventh Circuit recently discussed the policies underlying the confidential informant privilege:

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.... [T]he most effective means of protection, and by derivation the most effective means of fostering citizen cooperation, is bestowing anonymity on the informant, thus maintaining the status of the informant's strategic position and also encouraging others similarly situated who have not yet offered their assistance.

The government is granted the privilege as of right. No threshold showing of reprisal or retaliation is necessary. *Id.* However, the privilege is qualified.

> To determine whether the government is required to disclose the identity of the informant, the court must balance the public interest in obtaining information necessary to apprehend those who have committed crimes against the defendant's interest in a fair trial.

*United States v. Andrus,* 775 F.2d 825, 841 (7th Cir.1985). Whether disclosure is required depends on the circumstances of each case, taking into account the crime charged, possible defenses, and the significance of the informer's testimony. *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957). In short, the privilege gives way only upon the establishment of a genuine need for disclosure. *Andrus,* 775 F.2d at 842.

■ Here, the complaint contains sufficient facts to allow the claimants to investigate. The complaint describes in detail the dates, locations and circumstances of the transactions upon which the government's claim against the defendant property is based. At the same time, the claimants do not identify any necessary information that is in the sole possession of the informants.

Claimants maintain that disclosure is warranted so that they may investigate the credibility and bias of the informants. However, credibility and bias are relevant to the government's case at trial, not to the sufficiency of the complaint. Claimant's inability to obtain the identities of the government's informants at this time will not endanger their ability to advance a thorough defense and receive a fair trial. At this stage of the litigation, and in light of the detailed complaint filed by the government, there is no genuine need for disclosure. Thus, the balance weighs in favor of the government's need to maintain the anonymity of its informants. Accordingly, the claimants' motion to dismiss under Supplemental Rule E(2) is denied.

## II. Assets of South Side Finance

In Counts II and III, the government asserts that South Side Finance and all of its assets are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A). The assets at stake are South Side Finance's real property, office and other business equipment, an inventory of used cars, the contents of two safe deposit boxes,[2] and two checking accounts.

Section 981(a)(1)(A) provides for the forfeiture of,

**2.** The safe deposit boxes are not registered under the corporate name. Box 2786 is in the name of Mohammed Bustami and Faker Bustami. Box 3254 is in Mustafa Bustami's name. The government notes that the deed to South Side Finance's property at 6801–05 South Western Avenue is in Mohammed Bustami's name, that Faker Bustami is South Side Finance's registered agent, and that Mustafa Bustami is the corporation's president. Complaint ¶ 14.

Any property, real or personal, *involved in* a transaction or attempted transaction in violation of section 5313(a) or 5324 of title 31, or of section 1956 or 1957 of this title, or any property traceable to such property.

(emphasis added). Under 31 U.S.C. § 5313(a) and United States treasury regulations, a financial institution must file a currency transaction report with the IRS for every transaction involving more than $10,000 in currency. *See* Treasury Regulations, 31 C.F.R. § 103.22(a)(1) (1990). Section 5324 prohibits any person from structuring cash transactions so as to avoid the reporting requirements of § 5313(a). 18 U.S.C. § 1956 makes it illegal to knowingly conduct financial transactions with the intent: (a) to promote an illegal drug business; (b) to violate federal income tax laws, 26 U.S.C. §§ 7201 and 7206; (c) to conceal the nature, location, source, ownership, or control of drug proceeds; and (d) to avoid federal transaction reporting requirements.

The only issue in dispute as to Counts II and III is the scope of 18 U.S.C. § 981(a)(1)(A). The parties disagree on the correct meaning of the phrase "involved in" as it appears in the statute. Claimants urge a restrictive view, arguing that the phrase requires the government to show that the assets sought "actively participated" in the alleged violations. The government contends that the statute authorizes forfeiture of property used to "facilitate" the alleged criminal offenses. The term "facilitate" implies that the property makes the prohibited conduct less difficult or free from obstruction. *United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir.1990) (citations omitted).

■ The court need not choose between the two suggested interpretations. The complaint on its face demonstrates that certain assets are subject to forfeiture without respect to the conflicting interpretations advanced by the parties. South Side Finance utilized two checking accounts at Marquette National Bank to deposit cash. Bank records show that 354 of these deposits were in amounts just below the $10,000 reporting requirement threshold.

In addition, narcotics trained dogs reacted positively to three cash deposits, indicating the presence of narcotics residue or the odor on the money. Finally, the claimants concede the government adequately alleges that the bank accounts were involved in the prohibited transactions. Accordingly, the complaint sufficiently alleges a cause of action for forfeiture against the two bank accounts.

■ In contrast, the complaint fails to connect the contents of the two safe deposit boxes with any illegal transactions. According to the claimants, Box 3254 contains only personal items, such as car and property insurance policies, personal checks, documents relating to a trust agreement, marriage licenses, and jewelry. *See* claimants' motion to return property, exhibit 4. The government provides no additional facts as to the contents of Box 3254. Furthermore, there are no facts alleged in the complaint or in Agent Moss' attached affidavit identifying the contents of Box 2786. The government does not allege that drugs or drug money were kept in the safe deposit boxes or that the safe deposit boxes were used in any way to advance the alleged drug laundering scheme. Thus, under either interpretation of § 981(a)(1)(A), the government has failed to allege facts that support a conclusion the contents of the two safe deposit boxes are subject to forfeiture.

■ Finally, as to South Side Finance and its assets, the government alleges a money laundering scheme operating out of South Side Finance. According to the complaint, several drug transactions were consummated on the property, involving more than $100,000 and a total of more than six kilograms of cocaine. On one occasion, the government's informant received cocaine from an individual driving a car with dealer license plates. On another occasion, the exchange of drugs for money took place in the offices of South Side Finance. The government contends that the proceeds from the drug deals were laundered through the car dealership in an attempt to legitimize the profits. The money was then deposited into accounts at Marquette

National Bank. The government alleges that these deposits were made in a manner that violated federal law. In sum, the currency deposited was allegedly obtained through drug transactions occurring at South Side Finance's used car dealership. Thus, the complaint alleges facts supporting the government's allegations that South Side Finance, its office and equipment, and its inventory of used cars facilitated and were involved, in an active sense, in the prohibited transactions. Therefore, under either of the two suggested statutory interpretations, the government's complaint establishes that South Side Fiance's real property, its office and business equipment, and its inventory of used cars are subject to forfeiture under § 981(a)(1)(A). Claimants' motion to dismiss Counts II and III as to these assets is denied.

### III. Probable cause for forfeiture of condominium and currency

In Count IV, the government seeks forfeiture of a condominium and $107,000 in currency pursuant to 21 U.S.C. § 881(a)(6) and (7). Section 881(a)(6) provides that the following are subject to forfeiture,

> All moneys, ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, ... used or intended to be used to facilitate any violation of this subchapter....

Under § 881(a)(7), real property "used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment," is also subject to forfeiture.

 Claimants argue that the government has failed to establish probable cause for the forfeiture of the condominium and the currency. Probable cause in a drug forfeiture case requires reasonable grounds for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion. *United States v. Edwards*, 885 F.2d 377, 389–90 (7th Cir.1989). Existence of probable cause is based on the totality of relevant circumstances. *Id.*

"Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.*, quoting *Illinois v. Gates*, 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983).

According to the complaint, the informants bought large quantities of drugs from Mustafa Bustami on several occasions. Surveillance revealed that Mustafa Bustami, and others, carried gym bags between South Side Finance and the condominium on a regular basis. A search of the condominium uncovered three packages of currency, and traces of a white powdery substance believed to be cocaine.

Claimants contend that it is not unusual for a used car dealer to have large amounts of cash on hand. However, the currency uncovered here was not merely found in a cashier's drawer, safe, or cash pouch. Rather, the three packages of currency were sewn in envelope-sized cloth bags, wrapped in plastic, placed in shopping bags and secreted in three different heating vents in the condominium. These circumstances certainly give rise to a reasonable belief that the secreted currency was associated with a violation of federal narcotics statutes.

 Claimants also argue that allegations regarding the traces of what is believed to be cocaine are insufficient because it is not alleged that the substance was in fact cocaine. This argument is not persuasive. The court must view the complaint's allegations in the light most favorable to the government. *Gillman*, 878 F.2d at 1022. The complaint was filed on the same day that the condominium was searched. The government's inability to complete chemical analysis of the substance at the time the complaint was filed is not a reason to find that probable cause does not exist as to currency and condominium. Furthermore, a substantial connection is *not* required between the property and the related drug offense. *United States v. Real Estate Known As 916 Douglas Ave.*, 903 F.2d 490, 494 (7th Cir.1990). The nexus must merely be more than incidental or fortuitous. *Id.* The complaint

alleges that Mustafa Bustami and others at South Side Finance are drug traffickers, that they had constant access to the condominium where the currency was discovered, and that the currency was deliberately concealed. In addition, on another occasion, currency controlled by claimants tested positive for the presence of cocaine. This evidence, along with the allegation that the white substance found in the condominium was cocaine, establishes a reasonable belief that the currency represents proceeds of drug transactions, and that the property was used to facilitate drug transactions. Thus, probable cause exists for forfeiture of the condominium and currency. Accordingly, claimants' motion to dismiss Count IV for lack of probable cause is denied.

## IV. Due Process

 Finally, claimants contend that the government violated their due process rights by failing to provide a hearing prior to the seizure of the assets named in the complaint. Under 21 U.S.C. § 881(b),

Any property subject to civil forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims, ... except that seizure without such process may be made when ... (4) the Attorney General has probable cause to believe that the property is subject to civil forfeiture under this subchapter.

Supplemental Rule C(3) provides that, "[u]pon the filing of the complaint the clerk shall forthwith issue a warrant for the arrest of the ... property that is the subject of the action and deliver it to the marshal for service." However, in 1985, Supplemental Rule C(3) was amended to read as follows:

*Except in actions by the United States for forfeitures for federal statutory violations,* the verified complaint and any supporting papers shall be reviewed by the court and, if the conditions for an action *in rem* appear to exist, an order so stating and authorizing a warrant for the arrest of the vessel or other property

that is the subject of the action shall issue and be delivered to the clerk who shall prepare the warrant and deliver it to the marshal for service.

(emphasis added). Under the new Supplemental Rule C(3), the requirements for prior court review do not apply to forfeitures by the United States for federal statutory violations. Thus, the Attorney General operates under two different authorizations in cases of property forfeitures. He may file a civil forfeiture complaint in accordance with Supplemental Rule C, or he may act under 21 U.S.C. § 881(b)(4) if he has probable cause to believe the property is subject to forfeiture. Neither procedure requires the government to secure pre-seizure judicial review. In fact, Rule C(3) makes such a procedural requirement explicitly inapplicable to the government. *United States v. $152,160.00 United States Currency,* 680 F.Supp. 354, 357 (D.Colo. 1988); *United States v. 124 East North Ave., Lake Forest, Ill.,* 651 F.Supp. 1350, 1353 (N.D.Ill.1987); *A Parcel of Real Property,* 636 F.Supp. at 145.

 No judicial hearing prior to the seizure of claimants' property was held in this case. Some district courts have concluded that the procedural requirements of § 881(b)(4) and Supplemental Rule C(3) violate the due process clause. *See e.g., United States v. Certain Real Estate Property Located at 4880 S.E. Dixie Highway,* 612 F.Supp. 1492 (S.D.Fla.1985); *124 East North Ave.,* 651 F.Supp. at 1356. However, in those cases, there was no pre-seizure hearing *or ex parte* judicial determination of probable cause. The government merely filed its complaint and a warrant for the property issued automatically. In this case, the government secured a pre-seizure judicial determination of probable cause. Thus, the court need not decide the constitutionality of the statute because the government did more than the statute required. Accordingly, the question before the court is simply whether, under the facts of this case, claimants' rights to due process were violated.

In *Fuentes v. Shevin,* 407 U.S. 67, 91, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1969), the

Supreme Court set out three conditions that obviate the need for a pre-seizure hearing:

[First], the seizure [must be] necessary to secure an important governmental or general public interest. Second, there [must be] a special need for very prompt action. Third, the State [must maintain] strict control over its monopoly of legitimate force: the person initiating the seizure [must be] a government official responsible for determining, under the standards of a narrowly drawn statute, that it [is] necessary and justified in the particular instance.

Under the facts of this case, the first and third prongs of the *Fuentes* test are satisfied. Seizure of property under § 881(b) clearly serves the important governmental purpose of controlling the possession and distribution of illegal narcotics by subjecting property used to facilitate the drug trade to forfeiture. Additionally, under § 881(b), only the Attorney General, rather than a private individual, has the authority to seize property pursuant to statutory guidelines designed to minimize abusive behavior by law enforcement officials. *Certain Real Estate*, 612 F.Supp. at 1496.

Nonetheless, the second prong of the *Fuentes* test is not satisfied. There was no special need for "very prompt" government action. The government does not contend that there was a likelihood that the property would disappear. The subject property is not the sort that could be removed, destroyed or concealed if advance warning of confiscation were given. Thus, the *Fuentes* test is not completely satisfied here. Nevertheless, the court finds that sufficient pre-seizure procedures were followed to satisfy the due process clause.

On October 24, 1990, the government filed an *ex parte* motion for a determination of probable cause. The government's motion identified recent district court holdings regarding the constitutionality of Supplemental Rule C(3) and § 881(b)(4). The government also explained to the court that it was seeking preliminary judicial review to obviate any constitutional defect in the statutory procedure. After reviewing the verified complaint, the court found that there was probable cause to believe that the real property and assets described in the complaint were subject to forfeiture to the United States pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981. The court also found that premature disclosure of the complaint could jeopardize the interests of the government. Based on these findings, the court ordered the United States Marshal to execute a warrant of seizure and monition pursuant to Supplemental Rule C. *See* Order, October 24, 1990.

In light of these steps, claimants' due process rights were not violated. No court has held unconstitutional the seizure of real property pursuant to an order of the court after its *ex parte* review of the verified complaint and affidavit of probable cause. *United States v. 26,075 Acres, Located In Swift Creek TP*, 687 F.Supp. 1005, 1012 (E.D.N.C.1988). In fact, several courts have specifically held that under the fifth amendment, forfeiture of real property is prohibited unless a judicial officer conducts an *ex parte* review of the complaint and concludes that a reasonable basis is set forth for believing that the property is subject to forfeiture under § 881(b). *124 East North Ave.*, 651 F.Supp. at 1356; *A Parcel of Real Property*, 636 F.Supp. at 145–46; *$152,160.00 United States Currency*, 680 F.Supp. at 357–58; *Certain Real Estate*, 612 F.Supp. at 1496–97.

Finally, the nature of civil forfeiture actions justifies the use of *ex parte* procedures rather than full-scale judicial hearings.

[T]he objectives of section 881(b) might be frustrated were the government required to give the property owner prior notice of the hearing and seizure. Often times when the government seeks preliminary relief in these matters, it is based on information supplied by confidential informants or undercover agents the disclosure of whose identity would jeopardize the safety of the source and the success of the operation. Thus, just as in the case of a government application for a wiretap of a search warrant, policy and prudence may require that the

government's request for a warrant for arrest *in rem* be held ex-parte. *Certain Real Estate*, 612 F.Supp. at 1496–97. Furthermore, according to the Notes of Advisory Committee on Rules,

> ... a hearing ... could prejudice the government in its prosecution of the claimants as defendants in parallel criminal proceedings since the forfeiture hearing could be misused by the defendant to obtain by way of civil discovery information to which they would not otherwise be entitled and subject the government and the courts to the unnecessary burden and expense of two hearings rather than one.

Supplemental Rule C(3) note (1985).

Accordingly, the court holds that the procedures applied by the government in this case complied with federal forfeiture statutes and the due process clause of the Constitution. Claimants' motion to dismiss on these grounds is denied.

## CONCLUSION

Claimants' motion to dismiss is granted in part and denied in part. Counts II and III are dismissed only as to safe deposit boxes 2786 and 3254. The warrant of seizure for the contents of safe deposit boxes 2786 and 3254, issued on October 25, 1990, is quashed. The motion to dismiss is denied in all other respects.